UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Western Home Insurance Company,      Civil No. 09-1816 (DWF/LIB)
a Minnesota corporation,

            Plaintiff,

v.                                                      MEMORANDUM
                                                   OPINION AND ORDER
Cambridge Integrated Services
Group, Inc., a foreign corporation,

            Defendant.
_____

James T. Martin, Esq., Gislason Martin Varpness & Janes, counsel for Plaintiff.

Sonya R. Braunschweig, Esq., Andrew E. Saxon, Esq., and Margaret L. Parker, Esq., DLA Piper LLP, counsel for Defendant.
_____

## INTRODUCTION

This matter is before the Court on cross-motions for summary judgment brought by Plaintiff Western Home Insurance Company ("Western Home") and Defendant Cambridge Integrated Services Group, Inc. ("Cambridge"). For the reasons stated below, the Court denies the motions.

## BACKGROUND

Western Home writes and sells property and casualty insurance products. (Compl. ¶ 1.) Cambridge is in the business processing industry, including performing claims administration services for insurers. (*Id.* ¶ 2.) From 2000 until 2006, Cambridge performed claims handling services for Western Home. (*Id.* ¶¶ 4-5.)

The parties' dispute arises from the claims of insured non-parties Patrick and Elsa Major (the "Majors"). In 1999, the Majors obtained an insurance policy covering their California home from Western Home. On October 26, 2003, a wildfire destroyed the Majors' home. In February 2005, the Majors filed suit in California against Western Home,[1] alleging that Western Home underinsured their home.[2] The jury found that Western Home breached its contract with the Majors by failing to pay $31,359 in personal property benefits. The jury also awarded the Majors $1,285,471 in extracontractual damages.[3] The trial court entered judgment in the total amount of $1,316,831. Western Home appealed, and the Court of Appeals upheld the judgment. *Major v. W. Home Ins. Co.*, 169 Cal. App. 4th 1197, 1214-15 (2009). The California Supreme Court denied Western Home's Petition for Review.

---

[1] In the California suit, the Majors also sued their insurance broker, Countrywide Insurance Services, which settled with the Majors for $150,000 part-way through the trial.

[2] More specifically, the Majors alleged that Western Home failed to insure their home for its replacement cost. Under the Majors' insurance policy, Western Home agreed to repair or replace the home up to a specified percentage over the policy limits. This "extended replacement cost" coverage required that the policy's coverage limits equal the home's replacement cost. Western Home failed to inform the Majors that an inspection it performed in January 2002 found that their home's replacement cost exceeded the policy's coverage limits.

[3] The jury awarded $450,000 in emotional distress damages, $189,000 in attorney fees, and $646,471 in punitive damages.

In June 2009, Western Home brought this suit against Cambridge seeking indemnification under the parties' Contract for Services (the "contract"). (Aff. of James T. Martin, Ex. 1.) Section (C)(1) of the second amendment to the contract states:

> CAMBRIDGE shall indemnify, defend (subject to clause (3) below), and hold the CLIENT, its officers, directors, affiliates, subsidiaries, assigns, successors, shareholders, employees and agents (a "CLIENT Indemnitee"), wholly harmless from and against any and all demands, allegations, actions, proceedings, losses, damages, costs and reasonable expenses (including reasonable attorneys' fees and litigation expense), and regulatory fines or charges which arise out of or are in any way related to any alleged act, error or omission, including but not limited to, any intentional tort, wrongdoing or willful misconduct, and negligence or gross negligence, by CAMBRIDGE and its direct and indirect subsidiaries or their directors, officers, or employees, in connection with a Triggering Event (as hereafter defined) arising out of or in any way related to CAMBRIDGE'S performance or failure to perform its obligations under the terms of this AGREEMENT, including without limitation such demands involving or related to a claim alleging liability in excess of policy limits or a claim for extra contractual obligations. For purpose of this clause (1), a Triggering Event is any (a) breach or violation of any state fair trade or claims practices statute, law or regulation, (b) a breach, violation or non-compliance with a CLIENT Claims Best Practice, or (c) breach of the covenant of fair dealing or good faith by CAMBRIDGE that, for any of (a), (b) or (c), (i) results in a payment of contractual benefits of at least $50,000 more than would have been paid but for the breach; (ii) may reasonably result in a payment of extra-contractual damages solely as a result of the breach or violation; or (iii) results in litigation against a CLIENT Indemnitee solely as a result of the breach or violation. Upon the occurrence of a Triggering Event that is known to either party, such party shall provide immediate notice to the other party.

(*Id.* at Second Amendment § (C)(1) (emphasis added).)

The second amendment to the contract addresses who selects attorneys in the event a Triggering Event occurs:

> . . . In the event that the alleged act, error or omission involves an alleged act, error or omission arising from a Triggering Event of CAMBRIDGE under clause (1) above, the CLIENT shall select the attorneys to conduct

3

the defense thereof, <u>with the prior consent of CAMBRIDGE</u>, such consent not to be unreasonably withheld, . . .

(*Id.* § (C)(3).)

The second amendment to the contract also has an arbitration provision:

1. Scope of Arbitration. The parties agree to submit to arbitration, in accordance with these provisions, any dispute or disagreement between CAMBRIDGE and CLIENT including without limitation any and all disputes arising from or related to this AGREEMENT. The parties further agree that the arbitration process agreed upon herein shall be the exclusive means for resolving all disputes made subject to arbitration herein.

. . .

3. Time Limits on Submitting Disputes. The parties agree and understand that one of the objectives of this arbitration provision is to resolve disputes expeditiously as well as fairly, and that <u>it is the obligation of both parties, to those ends, to raise any disputes subject to arbitration hereunder in an expeditious manner</u>. Accordingly, the parties agree to waive all statutes of limitations inconsistent with the requirements of this Clause 4 and agree further that, as to any dispute that can be brought hereunder, <u>a demand for arbitration must be postmarked or delivered in person to the other party no later than one (1) year after a party notifies the other party of a dispute arising hereunder</u>. In the absence of a timely submitted written demand for arbitration, an arbitrator has no authority to resolve the disputes or render an award and no arbitrator has authority hereunder to determine the timeliness of an arbitration demand.

4. American Arbitration Association Rules Apply as Modified Herein. . . .

5. Invoking Arbitration. <u>Either party may invoke the arbitration procedures described herein, by submitting to the other</u>, in person or by mail, <u>a written demand for arbitration</u>, containing a statement of the matter to be arbitrated sufficient to establish the timeliness of the demand. . . .

(*Id.* § (G)(C)(1)-(5) (emphasis added).)

Western Home brought suit against Cambridge in Minnesota state court for breach of contract and negligence. Cambridge removed the action to this Court.

## DISCUSSION

### I. Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Cross-Motions

Both Cambridge and Western Home move for summary judgment. Cambridge presently seeks summary judgment that it is not required to indemnify Western Home on three grounds: (1) Western Home cannot establish that Cambridge was solely responsible for the extracontractual damages award; (2) Western Home failed to provide Cambridge immediate notice of its intent to seek indemnification; and (3) Western Home failed to demand arbitration within one year of sending notice to Cambridge. Western Home requests partial summary judgment[4] that Cambridge must indemnify Western Home for the extracontractual damages.

### A. Triggering Event

Cambridge seeks summary judgment that it is not obligated to indemnify Western Home because Western Home cannot prove that Cambridge was solely responsible for the extracontractual damages award. Cambridge argues that the contract specifically requires that its conduct must be the sole cause of the extracontractual damages in order for there to be a "Triggering Event" under the section of the contract that Western Home uses to seek indemnification. Cambridge contends that the jury's extracontractual award

---

[4] Western Home believes that there are genuine issues of fact regarding the expenses it incurred in defending the Major lawsuit. (Pl.'s Mem. in Supp. 30.)

resulted, at least in part, from Western Home's decision not to pay the policy limits, not solely because of any payment delays caused by Cambridge.[5]

Western Home argues that Cambridge does not need to be the sole cause of an award of extracontractual damages to trigger its indemnity obligation under the contract. Western Home asserts that Cambridge must indemnify Western Home if it "violates the Contract or where its conduct amounts to a violation of state law regarding fair claims handling requirement." (Pl.'s Mem. in Supp. at 3.) Western Home points to sections in the contract about allocation of fault in certain situations as proof that Cambridge need not be solely responsible to trigger the indemnity clause. (*See* Aff. of Martin, Ex. 1 at Second Amendment § (C)(4).) Western Home points to delays by Cambridge in the handling of the Majors' claim as reason for the extracontractual damages award.

Cambridge's motion for summary judgment on this ground turns upon the interpretation of "Triggering Event," and whether that term requires that extracontractual damages result solely from Cambridge's breach or violation. The primary goal of contract interpretation is to determine and enforce the intent of the parties. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn. 1979). Contract language "must be given its plain and ordinary meaning and will be enforced by the courts even if the results are harsh." *Bank Midwest, Minn., Iowa, N.A. v. Lipetzky*, 674 N.W.2d 176, 179 (Minn. 2004) (quoting *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346-47 (Minn. 2003)

---

[5] Both parties go to great lengths to detail the handling of the Majors' claims and trial testimony.

7

(quotation omitted)). The meaning of terms is determined within the context of the document as a whole and not in isolation. *Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349, 354 (Minn. 1979). Accordingly, courts are required to harmonize all provisions if possible and to avoid a construction that would render one or more provisions meaningless. *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995).

The construction and effect of a contract present a question of law, unless an ambiguity exists. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. *Id.* Generally, courts may resort to extrinsic evidence of intent to construe a contract only if an ambiguity exists. *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn. 1982).

Turning to the contract language, Section (C)(1) of the contract's second amendment defines Triggering Event:

> . . . For purpose of this clause (1), a Triggering Event is any
> (a) breach or violation of any state fair trade or claims practices statute, law or regulation, (b) a breach, violation or non-compliance with a CLIENT Claims Best Practice, or
> (c) breach of the covenant of fair dealing or good faith by CAMBRIDGE that, for any of (a), (b) or (c), (i) results in a payment of contractual benefits of at least $50,000 more than would have been paid but for the breach; (ii) may reasonably result in a payment of extra-contractual damages solely as a result of the breach or violation; or (iii) results in litigation against a CLIENT Indemnitee solely as a result of the breach or violation. . . .

(Aff. of Martin, Ex. 1 at Second Amendment § (C)(1).)

Subsection (i) does not apply to Western Home's indemnification claim against Cambridge because the payment of contractual benefits was not "at least $50,000 more than would have been paid but for the breach." Thus, Western Home's claim for indemnification must fall under subsections (ii) or (iii) above. In fact, Western Home's 30(b)(6) deponent John Buckley testified that Western Home is pursuing indemnification under subsection (ii). (Aff. of Sonya R. Braunschweig, Buckley Dep. at 163.)

Contrary to Cambridge's interpretation, subsection (ii) does not require that the extracontractual damages award resulted solely from Cambridge's breach or violation. Rather, subsection (ii) merely requires that Cambridge's breach or violation "may reasonably result in a payment of extra-contractual damages solely as a result of the breach or violation." Subsection (ii) also does not preclude allocation of fault once the determination that Cambridge's act alone could reasonably result in extracontractual damages. The question of whether Cambridge's act may reasonably result in damages solely as a result of the act is different than whether Cambridge's act solely resulted in damages. Under this subsection of the contract, Cambridge is only obligated to indemnify if its act may reasonably result in an award of damages by itself. Once this finding is made, Cambridge is required to indemnify for its breach or violation even if Western Home's actions also contribute to the award of extracontractual damages. Indeed, the Court suspects that in this case both parties' actions contributed to the jury's award of extracontractual damages.

The Court finds that genuine issues of material fact preclude summary judgment for either party on this issue. Namely, questions remain as to whether extracontractual

9

damages "may reasonably result" solely from Cambridge's breach or violation. As such, summary judgment is denied in this regard.

### B. Notice

Cambridge seeks summary judgment that it has no duty to indemnify because Western Home failed to give it proper notice of its claim for indemnification. Cambridge argues that the contract requires that a party provide immediate notice when it believes there has been a Triggering Event.

Western Home argues that Cambridge had timely notice of the Majors' lawsuit and Western Home's intent to seek indemnification. Western Home argues that Cambridge has been on notice since the Majors obtained counsel in 2004 and filed suit in 2005. Alternatively, Western Home argues that its right to indemnification did not accrue until the judgment against it was final.[6]

The contract requires immediate notice of a Triggering Event: "Upon the occurrence of a Triggering Event that is known to either party, such party shall provide immediate notice to the other party." (Aff. of Martin, Ex. 1 at Second Amendment § C(1) (emphasis added).) The contract also requires that the notice be written:

---

[6] The Court finds Western Home's argument that there is no Triggering Event until after judgment is final unpersuasive. Notice given after a judgment is final would not afford Cambridge the opportunity to participate in the underlying suit's defense, including the chance to consent to counsel as contemplated in the contract. (Aff. of Martin, Ex. 1 at Second Amendment § (C)(3).)

"Notices: Any notice required to be given under this contract shall be sent by certified mail. . . ." (*Id.*, Ex. 1 at Schedule II § F.)

The parties point to several instances when Western Home may have provided notice and/or Cambridge may have received notice. On October 5, 2004, counsel for the Majors sent Cambridge a letter requesting potential deadlines for filing lawsuits regarding the claim and mentioning bad faith claims handling and underinsurance allegations. (Aff. of Martin, Ex. 13.) The Majors brought suit against Western Home on February 2, 2005. (Pl.'s Mem. in Supp. at 8-10.) Western Home also alleges that it advised Cambridge it would seek indemnification after Western Home's summary judgment motion was denied in February 2006. (*Id.* at 12.)

Western Home also argues that it gave Cambridge notice on October 26, 2006,[7] when it sent Cambridge a letter "formally plac[ing] Cambridge [] on notice that in the event bad faith damages are awarded . . . as a result of Cambridge's claim handling," Western Home will look to Cambridge for indemnification. (Aff. of John Buckley, Ex. 2.) In a February 5, 2009 letter, Western Home refers to putting Cambridge on notice in the October 26, 2006 letter. (*Id.*, Ex. 4.) Notice given in October 26, 2006, a few weeks before trial, is not timely and would not give Cambridge the opportunity to participate in the underlying suit's defense, including the chance to consent to counsel as contemplated in the contract. (Aff. of Martin, Ex. 1 at Second Amendment § (C)(3).)

---

[7] Trial was set to begin on November 13, 2006.

Viewing the evidence in the light most favorable to Western Home, there are genuine issues of material fact as to whether Cambridge had notice in February 2006 or some earlier time and whether there was substantial compliance with the contract. Thus, the Court denies summary judgment to Cambridge on this ground.

### C. Arbitration Clause

Cambridge also seeks summary judgment that Western Home's lawsuit is contractually time-barred. Cambridge argues that the contract required Western Home to initiate an action within a year of notifying Cambridge of a Triggering Event and that Western Home failed to do so. In response, Western Home argues that the lawsuit is timely because Cambridge waived its right to arbitrate by ignoring the pre-arbitration meet and confer requirements and participating in this litigation for over a year.

Pursuant to the contract, "it is the obligation of both parties, to those ends, to raise any disputes subject to arbitration hereunder in an expeditious manner." (Aff. of Martin, Ex. 1 § (G)(C)(3).) The contract also states, "[e]ither party may invoke the arbitration procedures described herein, by submitting to the other, in person or by mail, a written demand for arbitration, containing a statement of the matter to be arbitrated sufficient to establish the timeliness of the demand. . . ." (*Id.* § (G)(C)(5).)

Both parties had an obligation to "raise any disputes subject to arbitration." Cambridge should have made a demand for arbitration within one (1) year had it desired to resolve the dispute through that channel. Because Cambridge did not request arbitration itself and did not previously raise this defense, Court finds Cambridge's

request for arbitration untimely and waived. Thus, the Court denies Cambridge's motion for summary judgment for contractual time-bar.

### D. Doctrine of Voucher

Western Home also argues that Cambridge agreed to be bound by the outcome of Cambridge's claim handling practices under the common-law rule of voucher. *See Master Blaster, Inc. v. Damman*, 781 N.W.2d 19 (Minn. Ct. App. 2010). The voucher doctrine prohibits an indemnitor from relitigating issues decided in a lawsuit when the indemnitee gave timely notice and the indemnitor refused to participate in the suit. *Id.* at 26. The voucher doctrine applies only to those issues common to both actions that were actually determined and are necessary to the judgment. *Id.*

While there are issues of fact whether Western Home is entitled to relief under the contract, the Court rules as a matter of law that the voucher doctrine does not apply to this case to the extent that Western Home argues that Cambridge is bound by rulings in the underlying lawsuit. Therefore, the Court denies Western Home's motion for summary judgment on this ground.

## CONCLUSION

The Court believes that the parties share responsibility for how the Majors' claims and this dispute were mishandled and strongly encourages the parties to seek mediation and settlement in this matter before spending additional resources fighting what seems to be an all-or-nothing battle to the parties. To that end, the Court encourages the parties to contact Chief Magistrate Judge Arthur J. Boylan's Calendar Clerk Kathy Thobe at 651-848-1210 for mediation of this matter.

Thus, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion for partial summary judgment (Doc. No. [27]) is **DENIED**;

2. Defendant's motion for summary judgment (Doc. No. [22]) is **DENIED.**


Dated: September 8, 2010        s/Donovan W. Frank
                                DONOVAN W. FRANK
                                United States District Judge